UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

JEFFREY S. NICHOLS,                          )
                                             )
            *Petitioner,*                    )
v.                                           )          No. 1:09-cv-183
                                             )          *Judge Edgar*
JAMES MORROW, Warden.                        )
                                             )
            *Respondent.*                    )

# M E M O R A N D U M

Acting *pro se*, Jeffrey S. Nichols ("Nichols" or "petitioner") has filed a petition for a *writ of habeas corpus* under ▷28 U.S.C. § 2254. (Court File No. 1). On June 20, 2005, pursuant to his guilty pleas, Nichols was convicted of ten counts of aggravated sexual battery; thirteen counts of sexual exploitation of a minor; one count of failure to appear; five counts of rape of a child; and one count of aggravated kidnapping.[1] He now seeks review of those convictions. Nichols claims that his pleas were invalid because he had ineffective assistance of counsel. The respondent has filed a motion to dismiss, a brief in support, and the state court record. (Court File Nos. 8, 9, 10 & 17; Addenda Nos. 1 - 16). Petitioner has replied in opposition to the motion. (Court File No. 24).

Nichols may obtain habeas relief if he can demonstrate that he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States. ▷28 U.S.C. § 2254. Under Rule 8 of the *Rules Governing Section 2254 Proceedings in the United States Districts Courts*, the Court is to determine, after a review of the response, the transcript, the record of the state court proceedings, and any expanded record, whether an evidentiary hearing is

_____

[1]Nichols' pleas to the child rape and aggravating kidnapping offenses were entered in accordance with the procedure articulated in ▷*North Carolina v. Alford*, 400 U.S. 25 (1970), which permits a defendant to pled guilty, while at the same time maintaining his innocence.

required.  If a hearing is not required, the district judge is to dispose of the case as justice dictates. The Court finds it is unnecessary to hold an evidentiary hearing in the present case.  After reviewing the pleadings, the record and the applicable law, the Court concludes that the ▷§ 2254 petition is without merit and  will **DENY** a writ.

## I.      PROCEDURAL HISTORY

Petitioner was convicted in the Bradley County, Tennessee, Criminal Court of twenty-eight sex offenses involving three minor victims: JS, WH, and MC (the victims will be referred to by their initials).  He was also convicted of one offense of failure to appear for absconding from the jurisdiction prior to the first trial setting.  (He was later captured in Canada.)  Petitioner was sentenced an effective seventeen-year prison term, consisting of twelve years for each aggravated sexual battery conviction and one child rape count; two years for each conviction of sexual exploitation of a child and for the felony failure to appear; and seventeen years for four counts of rape of a child—all ordered to run concurrently.  (Addendum No. 1).  Because petitioner's convictions were entered upon negotiated guilty pleas, he took no direct appeal.

Instead, Nichols filed a state post-conviction petition and an amended petition (the latter with the assistance of his retained attorney).  (Addendum No. 2, pp. 4-94, 101-103).  The post-conviction court conducted an evidentiary hearing and entered an order denying relief.   (*Id*., pp. 128-28). Petitioner appealed that order, but the Court of Criminal Appeals affirmed the lower state court's decision.  ⚑ *State v. Nichols*, No. E2007-01865-CCA-R3-PC, 2008 WL 5272482 (Tenn. Crim. App. Dec. 19, 2008), *perm. app. den*. (Tenn. 2009).  Next, petitioner filed a motion to rehear in the intermediate state court and a motion to correct /modify the record in the Tennessee Supreme Court. (Addenda Nos. 8 & 10).  Both motions were denied, as was Nichols' application for permission to

appeal. (Addenda Nos. 9 & 11). On June 24, 2009, Petitioner filed the instant ▷ § 2254 petition.


## II.  FACTUAL BACKGROUND

The facts underlying Nichols' convictions are drawn from the appellate court's opinion affirming the denial of post-conviction relief.

This case arises from allegations of sexual abuse by three minors, resulting in multiple charges by Bradley County grand juries against the Petitioner. As a result of the numerous charges, he pleaded guilty on June 20, 2005, to ten counts of aggravated sexual battery (case number 02-398 and case numbers 02-530 through 02-538), thirteen counts of sexual exploitation of a minor (case number 03-180), and failure to appear (case number 03-181). *See* Ⓒ Tenn.Code Ann. §§ 39-13-504, -16-609, -17-1003. The Petitioner also entered an *Alford* guilty plea to five counts of rape of a child and one count of aggravated kidnapping (case 02-706). *See* Ⓒ Tenn.Code Ann. §§ 39-13-304, -522.

At the guilty plea hearing, the State recounted the following facts supporting the Petitioner's convictions:

"Judge, in 02-398, and also in 02-530 thru [sic] 538, the state's proof with both of the victims would be that the [Petitioner] did fondle their genitals on each date alleged in the indictment, and in 02-706, the state's proof would be that the [Petitioner] performed oral sex on the victim in that case, and that he took him to his home and put a barbell up against the door where he was not permitted to leave from the bedroom of the [Petitioner's] home.

... In 03-180, Judge, the state's proof would be that we recovered the laptop computer, that the laptop computer was sent to the lab for testing and that there were pornographic images of children recovered from the laptop.

Judge, I will also say that in that in 02-398 the victim went back and spoke with the [Petitioner] and he was wired with a tape recorder and that the [Petitioner] did make some admissions at that time and apologized to the victim for what had gone on."

Pursuant to the plea agreement, the Petitioner received a total effective sentence of seventeen years at 100%. It was also noted at the guilty plea hearing that the Petitioner was a basketball coach and a director of the Boys and Girls Club and that, if he had not pleaded guilty, the trial court could have used such positions of trust to

3

enhance his sentences.

❧ *State v. Nichols*, 2008 WL 5272482, at*1 (footnotes omitted).


## III.    **DISCUSSION**

Nichols offers seven grounds for habeas corpus relief—all involving claims of ineffective assistance of counsel in connection with guilty pleas, which he now asserts were unknowing and invalid.  In moving to dismiss, the respondent asserts that Nichols has procedurally defaulted four grounds and that the remaining grounds provide no basis for relief, in view of the deferential review standards for adjudicated claims contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  The petitioner, as noted, opposes the motion, contending that no claims have been procedurally defaulted and that all claims merit relief.  The claims have been divided into two categories for ease of discussion: procedurally defaulted claims and adjudicated claims.

A.  ***Procedurally Defaulted Claims***

    1.  ***The Claims***.

This first category contains the following claims:

a.  *Ineffective Assistance - Alford Pleas*.  Counsel gave ineffective assistance by advising petitioner to enter *Alford* pleas to four counts of rape of a child because there were no factual bases to sustain the resulting convictions (Pet., Ground two, pp. 12-15);

    b.  *Ineffective Assistance - Victim's Age*.  Counsel gave ineffective assistance by failing to inform petitioner, prior to his pleas, that the evidence, indictment, and judgment sheet supported the victim as *being* thirteen during the alleged offense.  This information was vital since the primary element of child rape is penetration of a person under thirteen years of age and since petitioner could

4

not be convicted of child rape if the victim was not *under* thirteen (Pet., Ground three, pp. 15-18);

c. *Ineffective Assistance - Multiplicity/Double Jeopardy/ 6th Amendment*. Counsel gave ineffective assistance by advising petitioner to plead guilty to thirteen counts of sexual exploitation of a minor, when only one count of the offense should have been alleged in the indictment. This is so because the evidence supported the probability that all thirteen images could have come from a single website and could have been simultaneously downloaded to a computer and because the indictment lists the same time frame ("on or about the 10th day of May 2002") for each count. Charging all these counts violates the doctrine of multiplicity, the protections against double jeopardy, and unspecified Sixth Amendment rights (Pet., Ground five, pp. 22-26); and

d. *Ineffective Assistance - Impossibility Defense*. Counsel gave ineffective assistance with respect to nine of the aggravated sexual battery offenses involving WH (Case Numbers M-02-530 through M-02-538) by failing to investigate petitioner's defense that it was impossible for him to have committed those crimes because he did not know this victim during the time-frame alleged in the indictment and because WH was not at that time a member of the Boys & Girls Club of Cleveland—where the offenses allegedly occurred—and did not become a member until nearly one year later (Pet., Ground six, pp. 26-28).

As observed, respondent asserts a procedural default defense to the above four claims.

2. *Law of Procedural Default.*

A state prisoner who petitions for habeas corpus relief must first exhaust his available state court remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts. ▷28 U.S.C § 2254(b) (1). In order to fairly present a claim, it must have been offered to the state courts on substantially the same factual and legal bases upon which it rests in the federal

petition. *Vasquez v. Hillary*, 474 U.S. 254, 260 (1986); *Picard v. Connor*, 404 U.S. 270, 278 (1971).

If a claim has not been presented to the state courts, but a state court remedy is no longer available (i.e., when an applicable statute of limitations bars a claim), then the claim is deemed to have been procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004). If a claim has been presented to state courts, but those courts reject it on the basis that it has not been raised in compliance with a state procedural rule, it too has been procedurally defaulted. *See, e.g., Murray v. Carrier*, 477 U.S. 478 (1986).

In either scenario, the procedural default forecloses federal habeas corpus review, unless a petitioner shows "cause" to excuse his failure to fairly present the claim and "actual prejudice" stemming from the constitutional violation, *Coleman*, 501 U.S. at 732; *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977), or, alternatively, that a failure to review the claim will result in a miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 322 (1995). However, the latter showing requires a petitioner to establish that a constitutional error has probably resulted in the conviction of a person who is actually innocent of the crime. *Id.* at 323.

3. *Analysis.*

Under case law in this circuit, a court must make specific inquiries when a state asserts a petitioner's procedural default bars review of his federal claim. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A court must apply a four-factor analysis to determine: 1) whether there is a procedural rule which applied to a petitioner's claim and whether a petitioner complied with the rule; 2) whether the procedural rule was actually enforced against a petitioner; 3) whether it is an adequate and independent state ground sufficient to block habeas review; and 4) whether a petitioner

can demonstrate cause for his failure to comply with the rule and prejudice resulting from the alleged constitutional violation. *Id.*

In the first of several arguments, Nichols insists that the state courts had an adequate opportunity to address each claim because he presented the Court of Criminal Appeals with the substance of his claims, including the four claims in question, in a petition to rehear. However, "raising an issue in a petition for rehearing on appeal does not constitute exhaustion of state remedies." *Alcorn v. Smith, 724 F.2d 37, 40 (6th Cir.1983)* (citing *Weigand v. Wingo, 380 F.2d 1022, 1023 (6th Cir.1967)*), *vacated on other grounds,* 471 U.S. 1096 (1985); *see also Cruz v. Warden of Dwight Correctional Center, 907 F.2d 665, 669 (7ᵗʰ Cir. 1990)* ("Nor would it seem that presenting [a claim] to a state appellate court in a petition for rehearing would constitute a fair presentation either.").

Petitioner's citation to *Clemmons v. Delo, 100 F.3d 1394, 1403 (8ᵗʰ Cir. 1996),* calls for no different conclusion. In *Clemmons,* the petitioner's counsel, contrary to repeated instructions from his client, did not raise an issue in the state supreme court and, when the petitioner attempted to file a *pro se* supplemental brief raising the omitted issue, that court denied him leave to file a brief. While that case was reversed on appeal, *see Clemmons v. Delo, 124 F.3d 944 (8th Cir.1997),* the proposition for which it is cited by Nichols survived in the new decision. *Id.* at 948-49) ("We do not know what else [petitioner] could have done, as a practical matter, to present the claim to that Court for decision on the merits [and] therefore hold that the claim was fairly presented, and that the merits are now open for decision on federal habeas corpus.") (footnote omitted).

Significantly, however, in ruling that the claim was exhausted, the Eighth Circuit observed

that no state procedural rule controlled the filing of *pro se* briefs; that sometimes those briefs were accepted and sometimes they were not; and that, absent a regularly-followed state procedural rule, there was no adequate state law ground supporting a procedural bar. *Id.* at 949 n.3. That fact distinguishes *Clemmons* from the instant situation.

Here, the Court of Criminal Appeals cited to Tennessee Rule of Appellate Procedure 39 as listing the grounds for granting a rehearing, before finding that petitioner had failed to "present[] grounds sufficient to warrant a rehearing in this case." (Addendum No. 9). Here, there is a state procedural rule governing a petition for a rehearing, with which petitioner failed to comply. But here, there is no suggestion that the rule is not regularly applied. *See Dugger v. Adams*, 489 U.S. 401, 410-11 n.6 (1989) (A state procedural default rule that is not "consistently or regularly applied" by state courts is "not [an] adequate" state ground and does not bar habeas review.). Because Nichols failed to satisfy that rule, his claims have been procedurally defaulted. *See, e.g., Coleman*, 501 U.S. at 729-31; *Zarkani v. Mills*, 2006 WL 236935, *2 (Tenn. Crim. App. Jan. 30, 2006) ("A petition to rehear will not be construed as a vehicle by which a Petitioner may advocate a new position."); *State v. Pearson*, 1988 WL 105728, *2 (Tenn. Crim. App. Oct. 11, 1988) ("[T]office of the petition to rehear cannot be used to file supplemental briefs and present issues that should or could have been presented in the orderly issues of the proceedings.").

Petitioner next insists that his post-conviction evidentiary hearing was not full and fair since the post-conviction court entered its order, accrediting his counsel's testimony and disposing of his petition on August 1, 2007, even though his attorney did not offer that testimony until the following day, August 2, 2007. The state court record supports that Nichols' counsel testified on August 2, 2007, (Addendum No. 3, pp. 45-91), and that the post-conviction court's order was signed on

August 1, 2007. (Addendum No. 2, pp. 127-28). However, the post-conviction court's credibility findings were orally pronounced at the conclusion of petitioner's evidentiary hearing, (Addendum No. 3, pp.100-03), and the order, which the court requested the State to prepare, tracks those findings. *See* ▷ *Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir.2001) ("[A] full and fair hearing is not a precondition to according ▷ § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying ▷ § 2254(d)'s standards of review.").

The most logical explanation for the mismatched dates is that they resulted from a clerical error or a simple mistake and not some sort of judicial or prosecutorial chicanery. At any rate, Nichols should have called this matter to the attention of the state court which made the mistake, if one was made. *See* ↻ Tenn. R. Crim. P. Rule 36 (providing that "the court may at any time correct clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission"). Likewise, the other alleged errors in the state appellate court's opinion (i.e., mixing up the case numbers, referring to the wrong case number when discussing a cassette tape, etc.) were matters for the state court to entertain. Put simply, those claimed errors do not furnish a basis for habeas corpus relief. *See* ▷ *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (observing that habeas corpus relief does not lie for "a perceived error of state law."); *see also* ▷ *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) ("[R]elief may not be granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedures because such claims relate to a state civil matter, not the custody of a defendant.") (citing ▷ *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir.1986)).

Nichols also faults the post-conviction court for failing to require his trial co-counsel, James Bruce Richardson of Atlanta, Georgia, to testify at the evidentiary hearing. But petitioner himself

fails to explain how the state court's challenged omission excuses any procedural default or to what Attorney Richardson would have testified that would prevented the procedural default of the subject claims. Indeed, as observed, asserted deficiencies and irregularities in state post-conviction proceedings are not cognizable federal habeas corpus claims. *Kirby*, 794 F.2d at 247.

As the Court understands Nichols' next argument, he is alleging that his trial attorneys made various errors and that one attorney, Mr. Richardson, was "unlawfully practicing law." A petitioner can show cause for a procedural default where counsel gave ineffective assistance in violation of his right under the Sixth Amendment. *Carrier*, 477 U.S. at 488. Therefore, though it is far from clear, the Court broadly construes[2] these allegations as being offered as "cause" to excuse petitioner's procedural default. If this is so, any failure to raise the four subject claims in the state court would have to be attributed to petitioner's post-conviction counsel since Nichols took no direct appeal. Because Nichols had no constitutional right to an attorney in his post-conviction case, *Coleman*, 501 U.S. at 750; *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987), any error committed by that attorney cannot rise to the level of *constitutionally* ineffective assistance. Furthermore, the AEDPA provides that the incompetence of post-conviction counsel cannot furnish a ground for habeas corpus relief. 28 U.S.C. § 2254(I).

Petitioner's final position to counter respondent's procedural default defense is that he is actually innocent of the child rape offenses; the offenses of sexual exploitation of a minor; and the aggravated sexual assault offenses—in short, innocent of every crime save the felony failure to

_____

[2] Citing to *Conley v. Gibson*, 355 U.S. 41 (1957), *overruled on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Nichols correctly points out that his *pro se* pleadings should be viewed under less strict standards than attorney-filed pleadings . *See Haines v. Kerner*, 414 U.S. 519, 520 (1972).

appear offense. The factual bases for this claim of innocence are the same ones which support the alleged procedurally-barred claims themselves, i.e., that venue was lacking; that the victim in the child-rape offenses was thirteen years old and not a "person under thirteen," as required by the statute of conviction; that the computer images upon which the sexual exploitation of a minor charges were based could have been downloaded simultaneously from one website; and that he did not know the victim of the aggravated sexual assaults during the time the offenses were alleged to have been committed.

As discussed, a prisoner may overcome a procedural default if he shows that the a failure to review a claim will result in a miscarriage of justice; the showing hinges on whether he can establish that a constitutional error has resulted in the conviction of an innocent man. *Schlup*, 513 U.S. at 322-23. To succeed on an actual innocence claim, a petitioner must show *factual* innocence; *legal* innocence will not suffice. *Bousley v. United States*, 523 U.S. 614, 624 (1998). Moreover, a petitioner must demonstrate that his case is the truly extraordinary case, one where "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 537-38 (2006) (quoting *Schlup*, 513 U.S. at 327). And that new evidence must be reliable, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Id. at 537* (quoting *Schlup*, 513 U.S. at 324).

Bearing in mind that actual innocence means factual innocence, not mere legal insufficiency, *Bousley*, 523 U.S. at 623, the Court does not find that petitioner has presented any credible evidence (meaning new, reliable proof of the quality and nature described in *Schlup*) to suggest that he is actually innocent of any of those crimes. Therefore, assuming that there is a free standing

claim of actual innocence in a non-capital case, *but see* ▷*Dretke v. Haley*, 541 U.S. 386, 396 (2004) (declining to decide "whether and to what extent the [actual innocence] exception extends to non-capital sentencing error"), and ▷*Herrera v. Collins*, 506 U.S. 390, 404-405 (1993) ("We have never held that [the miscarriage of justice exception] extends to freestanding claims of actual innocence."), petitioner has failed to state one.

For all these reasons, the Court finds that the above four claims have been procedurally defaulted; that no exceptions apply to surmount the default; and that federal review has been forfeited thereby.

B. **Adjudicated Claims**

In this second category are three claims of ineffective assistance, which were addressed by the state courts as allegations that his guilty pleas were unknowing due to his incompetent attorneys.

1. **Standard of review**

State court decisions are reviewed by this Court under ▷28 U.S.C. § 2254(d), which is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This statute limits a federal district court's jurisdiction to review habeas claims on the merits. In particular, a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. ▷28 U.S.C. § 2254(d)(1) and (2).

A state court's determination of a factual issue shall be presumed to be correct and the

presumption of correctness can only be rebutted by clear and convincing evidence. ▷28 U.S.C. § 2254 (e)(1). Credibility findings made by state courts are entitled to the presumption of correctness. ⌶*Richards v. Quarterman*, 566 F.3d 553, 563 (5th Cir. 2009) ("[T]the state habeas court's factual determinations, including its credibility findings, are entitled to a presumption of correctness under ▷§ 2254(e)(1)."); ▷*Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007) ("[I]n the context of a *Strickland* evidentiary hearing, it is for the judge to evaluate the credibility of the criminal defendant and the former defense counsel in deciding what advice counsel had in fact given to the defendant during his trial, and such findings are entitled to the ▷Section 2254(e)(1) presumption (*see* ▷*Sophanthavong v. Palmateer*, 378 F.3d 859, 867 (9th Cir. 2004))."); ⌶*Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied*, ⌶495 U.S. 961 (1990).

2. ***Law Governing the Claims***.

Because Nichols' claims of ineffective assistance of counsel are intertwined with claims that his guilty pleas were unknowing and coerced, the jurisprudence involving each type of claim will be examined. *See* ▷*Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ( A defendant may show his guilty plea was not a voluntary and intelligent act because his attorney rendered ineffective assistance of counsel in violation of the Sixth Amendment.).

In the seminal Supreme Court case on guilty pleas, the Supreme Court observed that "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama, 395* U.S.238, 242 (1969). Because of the substantial consequences flowing from a plea of guilty and to ensure that a plea is voluntary and knowing, a trial court must ascertain, prior to accepting such a plea, whether a defendant understands that he is waiving three separate rights—the right to

a trial by jury; the right to confront his accusers; and the privilege against self-incrimination. ▷*Id. at 243-44*. Whether a plea is constitutionally permissible depends upon the particular facts of each case, but it is essential that a defendant be sufficiently aware of the relevant circumstances and the probable and direct consequences of his plea, ▷*Brady v. United States*, 397 U.S. 742, 748-49 (1979), and that the plea represents "a voluntary and intelligent choice among available alternatives." ▷*North Carolina v. Afford*, 400 U.S. 25, 31 (1970). Finally, a waiver of the *Boykin* rights cannot be presumed from a silent record. ▷*Boykin*, 395 U.S. at 243.

Ineffective assistance of counsel in a petition for habeas corpus review presents a mixed question of law and fact. ⚓*West v. Seabold,* 73 F.3d 81, 84 (6ᵗʰ Cir.), *cert. denied*, ⚓518 U.S. 1027 (1996). Therefore, a state court's conclusion counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by ▷28 U.S.C. § 2254 (e)(1). Ineffectiveness is a mixed question of law and fact, not a question of basic, primary, or historical fact. State court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of ▷28 U.S.C. § 2254(e). However, the performance and prejudice components of the ineffectiveness inquiry, which are mixed questions of law and fact, are not entitled to the deference. *See* ▷*Rickman v. Bell,* 131 F.3d 1150, 1153-54 (6th Cir. 1997), *cert. denied,* ⚓523 U. S. 1133 (1998).

The preeminent case for a Sixth Amendment claim of ineffective assistance of counsel is ▷*Strickland v. Washington,* 466 U.S. 668 (1984), in which the Supreme Court enunciated the criteria for evaluating those claims. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.,* counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance

prejudiced the defense, *i.e.,* deprived the defendant of a fair trial rendering the outcome of the trial unreliable.  *Id.* at 687-88; *Sims v. Livesay,* 970 F.2d 1575, 1579-81 (6th Cir. 1992).  S*ee also* *Flippins v. United States,* 808 F.2d 16, 17-18 (6th Cir.), *cert. denied,* 481 U.S. 1056 (1987).

To establish that his attorney was not performing within the range of competence demanded of attorneys in criminal cases, the defendant must demonstrate the attorney's representation fell below an objective standard of reasonableness.  *Strickland,* 466 U.S. at 687-88; *McMann v. Richardson,* 397 U.S. 759, 771 (1970).  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Strickland,* 466 U.S. at 689; *Sims,* 970 F.2d at 1579-80.  The reviewing court cannot indulge in hindsight, but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors.  *Strickland,* 466 U.S. at 690.  Trial counsel's tactical decisions are particularly difficult to attack.  *O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir. 1994).  A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy.  *O'Hara,* 24 F.3d at 828.  Effective assistance of counsel is presumed, and the Court will not generally question matters involving trial strategy.  *See United States v. Chambers,* 944 F.2d 1253, 1272 (6th Cir. 1991), *superseded in part on other grounds by* U.S.S.G. § 2D 1.5(a).

To demonstrate the prejudice prong, Nichols must show that absent his attorney's errors, there is a reasonable probability that the result of his trial would have been different.  *Lynott v. Story,* 929 F.2d 228, 232 (6th Cir. 1991).  KCIn order to establish prejudice within the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's professional errors, he would not have pled guilty but would have insisted on standing trial.  *Hill v.*

*Lockhart,*, 472 U.S. 54, 58 (1985).  A court's objective prediction of the outcome of a trial, had

there been one, is of paramount importance in assessing prejudice.  ☞*Id. at* 59-60.  Unless there is

a likelihood of a successful defense to the charge, no alleged error by counsel is a basis for relief.

☞*Id.* at 59.

    3.  ***Analysis***.

Each claim is discussed individually.

    a.  *Ineffective Assistance - Discovery/Communication/Investigation*.  In this claim, petitioner

asserts that counsel gave ineffective assistance by failing to provide him with physical discovery,

to communicate adequately with him, and to investigate the case conscientiously—all of which

clearly violate the Sixth Amendment of the U.S. Constitution and also caused  Nichols to enter

unknowing and coerced guilty pleas, at approximately 5:00 p.m. the day before the first trial was

scheduled to begin.  (Pet., Ground one, pp. 8-12).  Nichols offers the allegations of fact which follow

to support this tripartite claim.

Petitioner's trial attorneys, James F. Logan, Jr., and Mr. Richardson, failed to furnish

physical discovery to plaintiff–indeed Mr. Logan stated at the post-conviction hearing that he was

"unsure that he categorized and copied the [150 pages of] discovery."   Mr. Richardson filed a

motion for general discovery in all of Nichols' cases, but this motion and other motions were not

called for a hearing and there is nothing in the record to suggest that co-counsel ever received any

discovery. Petitioner was not supplied copies of any discovery materials, until he was confined in

state prison, and now maintains that, had he had access to those materials while he was awaiting

trial, he could have found some relevant defenses to support his innocence and a not-guilty verdict

at trial because, after he was furnished with the discovery, he *did* find them (citing five of the

grounds he has raised in this petition as the stated relevant defenses). Petitioner points to his discernment of those defenses as showing that he suffered prejudice.

The claim concerning a lack of communication is based on petitioner's contentions that Mr. Logan was inaccessible since he could not be called on the telephone from the county jail. Moreover, Mr. Logan admitted in his testimony that he had few face-to-face meetings with his client. Further, Mr. Richardson claimed that he was totally reliant on Mr. Logan, presumably meaning that the former relied on the latter to communicate with their mutual client. The implication here is that Mr. Logan's failure to communicate necessarily resulted in a lack of communication between petitioner and Mr. Richardson also.

Several allegations of fact shore up the claim that counsel failed to investigate. In testifying at the post-conviction hearing, Mr. Logan could only recall interviewing one possible defense witness, though Mr. Richardson had suggested that he interview the state's witnesses. Conducting these interviews was important since at least one victim had given conflicting statements and since one victim's father had admitted, in a sworn statement, that he had asked Nichols for money after his son made allegations of sexual abuse against petitioner. Furthermore, petitioner had passed information to his attorney regarding one victim's admission to at least six people that he had lied about the sexual abuse. Despite all this, Mr. Logan failed to interview the victims, their parents or the state's witnesses. Petitioner draws two conclusions from Mr. Logan's claimed inaction and lack of preparation: Counsel never intended to take the cases to trial and these errors deprived petitioner of information which he needed to make knowing and educated guilty pleas, and not the coerced pleas which were ultimately entered the day before trial was to begin. The lack of investigation ultimately prejudiced Nichols.

In addition, Nichols asserts that the record contains no orders on defense motions and that it suggests that the only investigation counsel performed was a cursory review of the prosecutor's file, including tape recording(s) and transcript(s). Petitioner also characterizes as attorney errors Mr. Logan's discussion of guilty pleas after only one pre-indictment meeting with his client and his willingness to recommend guilty pleas to all charges, despite his belief that he could prevail at trial on several of the charges, simply because the district attorney general wanted to bolster his statistics to impress the public with his job performance and would offer better deals to those who pled guilty to more crimes. Simply stated, the more crimes pled to; the lower the sentence.

When Nichols carried this claim to Court of Criminal Appeals during post-conviction review, the state court first addressed the invalid-plea claim, citing the relevant Supreme Court precedents (the *Boykin* line of cases) on guilty pleas as the law which controlled its analysis. Therefore, its decision was not contrary to well established law in Supreme Court jurisprudence. Nor did the state appellate court unreasonably find the facts when it related that the guilty plea transcript showed "that the trial judge carefully reviewed the rights that the Petitioner was waiving"[;] "that the Petitioner responded appropriately to questions"[;] and "that the Petitioner's sentences were explained to him, including that his effective seventeen-year sentence would be served at 100%." ⌘ *Nichols*, 2008 WL 5272482, at *11. Further reflected in the record, according to the state appellate court, was that Nichols "knew and understood the options available to him prior to the entry of his guilty pleas, including the right not to plead guilty and to demand a jury trial, and he made an informed decision of that course which was most palatable to him at the time." ᴋᴄ*Id.* Ultimately, it concluded that Nichols had knowingly and voluntarily pled guilty. ᴋᴄ*Ibid.*

The Court of Criminal Appeals, which combed the plea transcript and delved into the facts

in petitioner's case, did not unreasonably apply the legal rules in the pertinent Supreme Court precedent in finding that petitioner's guilty pleas were entered in accordance with constitutional principles. The transcript clearly shows that Nichols was advised of each of the rights he was waiving, including his right to appeal. He acknowledged his understanding of the rights he was giving up by answering affirmatively. (Addendum No. 2, p. 59). The trial court reviewed with petitioner the counts in each indictment to which he was pleading and ascertained that his attorneys had explained to him the range of punishment that he faced if he went to trial and were convicted. (*Id.*, pp. 55-60).

The prosecutor listed the facts underlying the offenses to which Nichols was pleading, including informing the court about the tape recording between him and a victim, which, she stated, contained "some admissions . . . and [an] apolog[y] to the victim for what had gone on." (*Id.*, pp. 62-63). Further, Nichols responded negatively when asked if he had been threatened, harassed, or coerced into pleading guilty and answered, "Yes, Sir," when asked if he was pleading to the child rape counts because it was in his best interest to do so and to the remaining counts because he was guilty. (*Id.*, pp. 50-60). Finally, he indicated that he understood that his effective sentence would be "a seventeen year one hundred percent service time sentence." (*Id.*, p. 58).

The state's evidence against Nichols was strong, with the exception, according to Mr. Logan, of four counts of child rape. (Addendum No. 3, pp. 65-66). Entering guilty pleas was a reasonable and wise choice, given the proof and the "many, many counts of serious crimes," (*Id.*, p. 101), charged in the indictments. By pleading guilty, Nichols was able to obtain a significant benefit—a seventeen year sentence instead of "a hundred and, more than a hundred years" he risked on just one indictment, had he proceeded to trial. (*Id.,* p. 64). Considering the possible consequences if the jury

convicted him, this was the best result for petitioner under the circumstances.

The record reflects that Nichols understood the nature of his pleas; that there was no deception to him as to how much time he would have to serve as a result of his pleas; and that he disavowed that anyone had coerced him to enter those guilty pleas. Nichols has not shown that his guilty pleas were constitutionally infirm and he is not entitled to habeas corpus relief. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review.'" *Desmyther v.Bouchrd, 108 Fed.Appx. 364, 366-67 (6th Cir. 2004)* (unpublished table decision), *available in* 2004 WL 1921182, (quoting *Frank v. Blackburn*, 646 F.2d 873, 880, 882 (5th Cir. 1980)).

Turning to the allegations of attorney incompetence, the state appellate court identified *Strickland* as the premier case for evaluating claims of ineffectiveness assistance of counsel. In its examination of Nichols' claim, the Court of Criminal Appeals referred to Mr. Logan's testimony during the post-conviction hearing in which he had averred that the State had an "open discovery policy," which allowed him to view any document in its file; that he had viewed discovery in all of the cases, yet concentrated on the first case set for trial; that he had received a transcript and audio tapes of a recorded conversation between one of the victims and petitioner—one of the latter items inaudible and one enhanced; and that he had discussed those tapes and the suppression of the transcript with his client, but "saw it as a matter of trial strategy to wait until the trial" to avoid educating the State about how to ensure the admissibility of the enhanced tape.[3]

---

[3] On this issue, counsel testified, as follows: "I knew with absolute certainty what the outcome of the motion hearing would be, and that is that the [c]ourt would have allowed the jury to have heard the, at least the first tape and would have allowed the state to hear the [c]ourt's

Counsel also confirmed that he had not given his client copies of all the documents because, as he explained, Nichols was in custody and because he wanted to prevent other prisoners from having access to certain documents.

Mr. Logan further declared that he had gone over discovery materials with Nichols in the child rape case; had participated in plea discussions and other potential resolutions with petitioner before the indictments were returned, believing it important to discuss resolution of the cases before the community's interest grew; and, though he had not had many meetings, he had had a lengthy meeting and telephone conversations with Nichols before his indictments; and had a post-indictment meeting with him in his law office. Counsel acknowledged that the victim's inconsistent statements would provide "a good defense" to four of the child rape counts and that Nichols had taken the position that he was not guilty of any wrongdoing.

Even so, Mr. Logan testified that, because of the district attorney general's policy of inflating his statistics by offering better deals to those who pled guilty to more offenses, which he explained to his client, and because counsel was focused on the actual time he would serve rather than the particular counts to which he would plead guilty, petitioner ultimately pled guilty to all counts of child rape. Additionally, Mr. Logan believed that there was one victim's statements which would lead to convictions on the kidnapping count and one count of rape of a child and that, if Nichols went to trial, his sentence would exceed the seventeen years the state was offering in exchange for

_____

reasoning about the use of the enhanced tape, that they would have to have the witness here who participated in the enhancement to show that no alterations were made and those kind of things and so my belief is that it would have substantially weakened the prospect of our resolution of the case if we were forced to trial." (Addendum No. 3, p. 64). Mr. Logan believed that the admission of the enhanced tape would be "significantly prejudicial"to his client, but that "the transcript would have been far more significant that the recording." (*Id.*, p. 63).

his pleas. Likewise, Mr. Logan was concerned that, if petitioner were convicted of anything, his sentence(s) would be enhanced, based on his position of trust as the director of the Boys and Girls Club of Cleveland or, perhaps, be set to run consecutively. (The plea-accepting court remarked that there was a 100% chance that, without a plea-bargain, a position-of-trust enhancement would be applied to any sentence Nichols received.) And too, counsel expressed concern that a flight instruction would have been given in the jury instructions in one case and, possibly, all cases. Mr. Logan thought petitioner made an intelligent and informed decision to plead guilty, stating: "There's no question that he knew what he was doing at all. He didn't like it but he knew what he was doing." ⊩ *Nichols*, 2008 WL 5272482, at *11.

The state appellate court, after indicating that the post-conviction court strongly relied on counsel's testimony, referred to its findings. Discovery, according to the post-conviction court, was not furnished to Nichols because he was in jail and because counsel believed it unwise to have other inmates gain information and know his client's position. The post-conviction court found that keeping hard copies of discovery from an incarcerated client to be a legally sound practice, since federal inmates, who were housed with Nichols, could have reviewed the materials and, if the pleas were unsuccessful, could have testified against him to reap benefits in their own cases. As to petitioner's complaint about motions, the lower state court determined that the main reason the motions were not heard was that Nichols fled the jurisdiction but that another reason was that a motion to suppress the transcript was more of a in limine matter which could be heard the morning of trial.

Furthermore, observed the Court of Criminal Appeals, Nichols had testified at the evidentiary hearing that he had also conversed with Mr. Richardson and that he understood his

*Afford* pleas because both attorneys had discussed those pleas with him.  And too, noted the state appellate court, petitioner also responded, during his guilty plea colloquy, that he had no complaints about his trial counsel and he reaffirmed that he was satisfied with his lawyer's representation, even after the lower court referred to his prior *pro se* letter seeking a continuance.

The state appellate court held that the record supported the lower court's rulings that Nichols had failed to show either deficient performance or prejudice and it did not give petitioner any relief on his claim of ineffective assistance.

The Court of Criminal Appeals, which reviewed Nichols' post-conviction record, did not reach a decision contrary to the well established law in a Supreme Court precedent, since it correctly identified *Strickland* as the source of the controlling legal principles.  By the same token, it did not unreasonably apply the *Strickland* test in finding that petitioner had failed to show that he received ineffective assistance from his attorneys.

Nichols' assertion of two brief meetings of not more than five minutes with Mr. Logan in the time leading to the guilty pleas was undermined by Mr. Logan's testimony at the post-conviction hearing (which the trial court accredited), though counsel did acknowledge that they "didn't have many meetings" but "had mostly telephone conversations . . . but we did have meetings." (Addendum No. 3, p.76).   As to the motion to suppress, counsel explained that his rationale for making the decision to wait until trial to press that motion was that he knew that the judge would admit one tape and would instruct on the chain-of-custody requirements for admission of the enhanced tape and, thereby, give the prosecution insight into the method for getting the tape

admitted[4]. Again, as the state courts found, that was a strategic decision and that finding is supported by the state court record and entitled to deference. *See* ▷ *Strickland, 466 U.S. at 689* (stating that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Counsel testified that he reviewed discovery in all the cases, discussed it with his client, dealt with three of the state prosecutors, and interviewed the investigating officer. Mr. Logan further testified that he and someone else in his office had spoken with a person whom his client had indicated would report that one victim, JS, admitted to him (the person) that he (JS) had made up lies about petitioner, but that the individual was not inclined to support Nichols. (*Id.*, p. 85). Nichols himself testified that, at their last meeting, both defense attorneys questioned him for the purpose of preparing him to testify at trial, that they determined that he would make a bad witness, and that, at some point, they had also discussed the *Afford* pleas.

As to the second component of *Strickland*'s test, Nichols' asserts in his habeas petition that he was prejudiced because he would have used the defenses he located in the later-received discovery materials to obtain not guilty verdicts at trial. This is not the same claim of prejudice he presented in his post-conviction appellate brief. There, he insisted that, due to the lack of investigation and communication on the part of his defense attorneys, he relinquished his right to a jury trial. (Addendum No. 5, p. 12). Accordingly, because the factual basis of the claim of

---

[4] The post-conviction court noted, in its oral findings at the post-conviction hearing, that "[a]nytime a transcript is in issue, it's an evidence question, and it can be raised, and Mr. Logan, a fine lawyer, had reasons for raising it at the last minute with inexperienced, in this case, prosecutors, and based on the testimony I heard about a 17 year plea for many, many counts of serious crimes apparently it was a DA's office with very little depth is the nicest way I will put that." (Addendum No. 3, p. 106).

prejudice alleged in this Court differs from the one alleged in state court and because a constitutional claim offered to this Court which does not rest on the same theory upon which it rested in state courts is procedurally defaulted, Nichols has forfeited federal review of this particular claim of prejudice. *Wong v. Money*, 142 F.3d 313, 321-22 (6th Cir.1998) ( finding that a claim of ineffective assistance procedurally defaulted where argument in federal court was based on different grounds than argument in state court).

Even if this particular claim of prejudice has not been procedurally defaulted, to demonstrate a reasonable probability that he would have gone to trial, petitioner is required to present evidence apart from a bare assertion that, but for counsel's error, he would have pled not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir. 1995), *cert. denied*, 516 U.S. 1058 (1996), *superseded by statute on other grounds as stated in Dickerson v. Vaughn*, 90 F.3d 87 (3d Cir. 1996). Nichols indicates that his specific defense on this count would have been that the victim was not under thirteen. True, the victim made contradictory statements to the authorities with reference to that point (stating that Nichols stopped touching him before he turned thirteen; that the abuse happened before and after his twelfth or thirteenth birthday, that he was going on 11 years old when the incidents occurred; that he believed it was summer of 2000 when it all started and it stopped in the winter 2001; that he thought he was eleven the first time Nichols touched him in the groin area; and that it started when he was turning 11, *see* Addendum No. 4, pp.5-7, 10-11).

However, since "a person under thirteen (13) years of age" is an element of the offense of child rape, the state would have borne the burden of proof on the victim's age. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *In re Winship*, 397 U.S. 358 (1970); *Hardin v. State*, 210 Tenn. 116, 355 S.W.2d 105 (1962). Indeed, "the burden of proof, as those words are understood in

criminal law, is never upon the accused to establish his innocence, or to disprove the facts necessary to establish the crime for which he is indicted. It is on the prosecution from the beginning to the end of the trial, and applies to every element necessary to constitute the crime." ▷*Davis v. United States*, 160 U.S. 469, 487-88 (1895), *superseded by statute on other grounds as stated in* ▷*Dixon v. United States*, 548 U.S. 1 (2006). Therefore, petitioner would not have had to interpose the under-thirteen defense because, in order to establish the rape of a child offense in the first place, the State would have had to prove in its case-in-chief that the victim, beyond a reasonable doubt, was under thirteen years of age when the incident occurred. Thus, there was no prejudice and the state appellate court did not unreasonably apply *Strickland* in so concluding. *See* ▷*United States v. Cronic*, 466 U.S. 648, 657 (1984) (observing that "even when there is a bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances") (all citations omitted).

b. *Ineffective Assistance - Venue.* Counsel gave petitioner ineffective assistance by failing to advise him that he had a viable venue defense because his indictment was handed down in one county, but the alleged child rape offenses occurred in a different county. (Court File No. 1, pp. 18-22). Because petitioner did not know of the venue defense, his pleas to the rape-of-a-child offenses were not in his best interests and were the result of ineffective assistance of counsel and not of a knowing waiver of his constitutional rights.

When this post-conviction claim was carried to the Court of Criminal Appeals, that court reviewed counsel's testimony at the evidentiary hearing as to a possible venue defense:

> I had discussions with Detective Dailey and I think that we talked about it right back here in the room, that if the jury believed [the victim] in his statements there's a venue defense that I have used successfully in a trial, but my client was going to be found guilty as homemade sin of having done something. Because the jury is told,

one of the very first parts of our instructions are, as you know, is that the constitutional or whatever, I've forgotten how the charge reads, that you've got to find venue in the case and that this crime occurred here in Bradley County, and ... if the jury believed [the victim] that we could potentially get a jury verdict of not guilty or an acquittal here. You know, forum shopping for a defendant and the state carries with it lots of risks, but it is a potential problem when the state says something happened somewhere or they try to use some kind of hypotechnical reason to say that it happened here, and, you know, jurors want to vote and treat fairly.

*Nichols*, 2008 WL 5272482, at *5.  In his testimony, Mr. Logan characterized his handling of the venue issue as a matter of trial strategy.

After this recitation of the post-conviction hearing testimony, the Court of Criminal Appeals, noting Mr. Logan's statement that he intended to challenge venue once the jury was sworn, found that the best result that could have been achieved had he done so was dismissal of the charges in Bradley County and new filings in the proper venue.  Concluding that the proof supported the lower state court's finding that petitioner failed to show that he would not have entered the pleas, had he known about the venue issue, but would have insisted on going to trial, the Court of Criminal Appeals declined to grant relief.

The transcript of the evidentiary hearing reflects that Mr. Logan testified that petitioner "fully knew he could have gone to trial on every case;" and that, though counsel had found some problems with the state's case in the child rape matters, it was counsel's desire, which he had conveyed to his client, to have a resolution of all the cases, so as not to leave out "any loose ends;"and that an offer was made which would resolve all the cases, reserving to Nichols the right to maintain his innocence with respect to the child rape charges.  (Addendum No. 3, pp. 94-95). Petitioner himself testified that, in the course of negotiating the pleas, counsel told him that the child rape charges would have to be included in a plea bargain, and when petitioner rejected that proposal,

counsel returned with a second offer—to try the child rape cases, but to plead guilty on all other charges. (*Id.*, pp 35-36). Petitioner likewise rejected that offer, explaining that, if he was "going to trial on one [case, he] was going to go to trial on all of them." (*Id.*, p. 36). Thereafter, Nichols agreed to plead guilty under *Alford* to the child rape and kidnapping counts; to plead guilty to the other charges; and, thereby, to dispose of all charges against him.

Finding that Nichols had failed to establish that, but for Mr. Logan's failure to raise the venue issue, he would not have entered those pleas but would have proceeded to trial, the Court of Criminal Appeals affirmed the post-conviction court's ruling and declined to grant any relief on this issue.

Nichols' position on pleading guilty to the child rape offenses and his all-or-none comment (i.e., that, if he was tried on one offense, then he would insist on going to trial on all charges) cuts against his claim of prejudice. It does so because it suggests that the venue issue was not nearly as important to petitioner in the child rape matters as his being allowed to enter *Afford* pleas, maintaining his innocence, while agreeing that the state had evidence to support that he committed those offenses, and, perhaps, to avoid a piecemeal disposition of the charges (i.e., going to trial in all cases or pleading guilty, including the *Afford* pleas, in all cases). And, had the venue defense been asserted prior to the guilty pleas, as the state appellate court noted, the prosecution could have remedied the venue error quite easily by dismissing the charges in the improper venue and filing them in the correct one. Thus, had the issue been advanced prior to the guilty pleas, Nichols would have still faced the same kidnapping and rape of a child offenses, albeit in a different county, along with the other child sexual offenses with which he was charged in Bradley County.

Given the importance petitioner seemingly attached to type of pleas he would enter to the

child-rape charges and to the all-or-none resolution of all charges, there is nothing in the state court record which reflects that counsel's mounting a venue defense would have dissuaded petitioner from accepting an offer that accomplished just those things. Therefore, the state court did not unreasonably apply *Strickland* in concluding that Nichols had not shown ineffective assistance with respect a potential venue defense. Habeas corpus relief cannot be based on this claimed attorney error.

c. *Ineffective Assistance - Conflict of Interest.* Counsel gave ineffective assistance by failing to disclose to petitioner an actual conflict of interest which created an appearance of impropriety, placed them in a position of divided loyalties, affected the adequacy of representation, and caused his pleas to be unknowing, unintelligent, and involuntarily entered . (Court File No. 1, pp. 28-32). The alleged conflict occurred when Mr. Logan represented Nichols's father in a real estate case filed against Nichols, after he fled to Canada.

The background of this claim was revealed through Mr. Logan's testimony during the post-conviction hearing. Counsel stated that, after Nichols was indicted, released on bond, and failed to appear in court, he moved to withdraw from the representation. Nichols' father had paid his son's legal fees and costs and was owed approximately $9,000 for a cash bond he had paid for his son. A foreclosure notice had been filed against Nichol's home, in which there was some equity, so another lawyer in Mr. Logan's firm handled a civil action against Nichols on behalf of his father to recapture those monies by trying to set aside the foreclosure. Petitioner was captured; returned to Bradley County; told about the civil suit; and chose to have Mr. Logan continue as his attorney. No order of withdrawal was filed and the civil suit was dismissed eventually.

After its recounting of the circumstances surrounding this alleged instance of ineffective

assistance, the state appellate court, citing *inter alia*, ▷*Cuyler v. Sullivan*, 446 U.S. 335, 350, (1980), addressed the first issue to be decided—whether there existed an actual conflict of interest which would have precluded Mr. Logan from continuing to represent petitioner.

> "In determining whether to disqualify an attorney in a criminal case, the trial court must first determine whether the party questioning the propriety of the representation met its burden of showing that there is an actual conflict of interest . The mere fact that counsel might have a potential conflict of interest in representing multiple clients does not authorize a presumption of ineffective assistance of counsel. [U]ntil a [petitioner] shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."

Ⱶ *Nichols*, 2008 WL 5272482, \*12 (all internal citations and quotation marks omitted).

The Court of Criminal Appeals then summarized the testimony given at the evidentiary hearing regarding this issue, specifically reiterating that Mr. Logan disclaimed that the matter was a "contrite lawsuit," but insisted that petitioner and his father had no dispute and that "it was certainly consensual." The state appellate court found no reason to disagree with the post-conviction court's finding of no conflict of interest because it concluded that the record did not reflect that trial counsel represented divergent interests. It did not grant petitioner relief on his conflict claim.

Petitioner has a constitutional right to the assistance of counsel who is not laboring under a conflict of interest. ▷*Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citing ▷*Cuyler v. Sullivan*, 446 U.S. 335 (1980), and ▷*Holloway v. Arkansas*, 435 U.S. 475, 481 (1978)). To prevail on a claim of ineffective assistance due to a conflict of interest, a petitioner who did not object at trial (or, here, at the plea hearing) must show "that an actual conflict of interest adversely affected his lawyer's performance." ▷*Cuyler*, 446 U.S. at 348. A mere showing that counsel represented potentially conflicting interests, as opposed to actual, conflicting interests, is not enough to establish a claim

of ineffective assistance. *Id.* at 349 (noting that "the possibility of conflict is insufficient to impugn a criminal conviction"). Where an actual conflict is shown, a presumption of prejudice arises. *Id.* at 349-50; *Mickens v. Taylor*, 535 U.S. 162, 173 (2001). What a petitioner is required to do is to "demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996).

In this case, the state court applied *Cuyler* to the facts of petitioner's case and determined that he had failed to show that Mr. Logan represented divergent interests or labored under an actual conflict of interest which adversely affected his performance. Indeed, counsel's testimony was that the civil suit, which had as its aim the repayment of funds petitioner's father had expended for his son's defense, was copasetic with petitioner. The alleged conflict, at most, was one in theory, but not one in fact. Therefore, the adjudication of this claim in the state court did not result in a decision that is contrary to, or an unreasonable application of, the well established rule in Supreme Court cases.[5] Thus, Nichols is not entitled to the writ with regard to this claim.

**IV. CERTIFICATE OF APPEALABILITY**

Finally, the Court must decide whether to issue a certificate of appealability (COA). Petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a

---

[5] The Court has deemed counsel's claimed conflict of interest to be based on concurrent representation, though it has located no Supreme Court case with the same factual pattern as in petitioner's (i.e., counsel represented petitioner, who subsequently fled the jurisdiction; next, represented petitioner's father, without having had a ruling on his motion to withdraw from the absent petitioner's case; and, ultimately, resumed representation of petitioner, upon his return to the jurisdiction, apparently, without moving to withdraw from representation of petitioner's father).

constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural rulings or its assessment of his constitutional claims. *See* ▷ *Slack v. McDaniel*, 529 U.S. 473 (2000). The Court has found that many of petitioner's claims were procedurally defaulted and that he had made no or an sufficient showing of cause and prejudice to overcome this obstacle. The Court also found that some claims were adjudicated in state court but would not support habeas corpus relief because, after an examination of the state court decisions, the record, and the relevant governing law in Supreme Court cases, those rulings did not run contrary to well established federal law, did not reflect that the state court had unreasonably applied that law, and did not demonstrate that the state court had disposed of the claim by unreasonably determining the facts offered to those courts.

The Court now finds that reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve encouragement to proceed further," ▷ *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance of a COA. ℂ 28 U.S.C. § 2253; ℂ Fed. R. App. P. 22(b).

## V.    CONCLUSION

Respondent's motion to dismiss (Court File No. 8) will be **GRANTED** as to all claims. Petitioner is not entitled to an evidentiary hearing, and his ▷ § 2254 petition (Court File No. 1) will be **DISMISSED**.

A judgment will enter.


_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE